IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD ANDRIA JOHNSON, :
    Plaintiff :
     :
    vs.      CIVIL NO. 1:CV-10-1003
     :
U. S. CITIZENSHIP AND :
IMMIGRATION SERVICES,
    Defendant :

*M E M O R A N D U M*

I. *Introduction*

Richard Andria Johnson has filed a petition for review of the decision of the respondent, U.S. Citizenship and Immigration Service (the "USCIS"), denying his application for naturalization. The USCIS denied the application under 8 U.S.C. § 1447(a), and we have jurisdiction over the petition for review by way of 8 U.S.C. § 1421(c). Respondent has filed a motion for summary judgment.

The USCIS denied the application because Petitioner had two convictions involving moral turpitude while his naturalization petition was pending. Johnson's petition for review presents as the sole ground for relief that the government should be equitably estopped from denying him citizenship. He bases this position on the USCIS's failure to decide his naturalization application within the mandated 120-day period for doing so, and for about a year and nine months thereafter, before Petitioner committed the offenses involving moral turpitude. Petitioner asserts that the USCIS should have decided his application during this period of time when he was eligible for citizenship, and that its delay until after he had his two convictions entitles him to equitable relief.

We will deny the petition as equity cannot be invoked in a citizenship claim.

II. *Background*

We take this background from the respondent's statement of material facts in support of summary judgment and Petitioner's response thereto.

Johnson is a citizen of Jamaica. He entered the United States on September 12, 1985, and became a lawful permanent resident on or about that date by virtue of an immigration visa petition filed by his mother, who lives in Brooklyn, New York.

On October 6, 2004, under 8 U.S.C. § 1446, he filed his naturalization application.[1] On July 5, 2005, a USCIS officer interviewed him regarding the application. In September 2005, while his naturalization application remained pending, Johnson committed criminal acts in the course of his employment at a McDonald's restaurant in Connecticut. A Connecticut prosecutor eventually filed charges against Johnson as a result of his September 2005 criminal actions. On March 21, 2007, Johnson pled guilty under Connecticut law to larceny in the fourth degree (Conn. Gen. Stat. § 53a-125) and to passing a bad check (Conn. Gen. Stat. § 53a-128). The same day, the state court sentenced Johnson to consecutive one-year sentences of imprisonment, to be followed by consecutive two-yearسnt sentences of probation, and ordered him to pay $2,550 in restitution to the McDonald's restaurant. Johnson paid restitution the same day, and the court suspended execution of his two-year term of imprisonment and converted 47 months of his 48-month total probation term to conditional discharge.[2]

---

[1] Petitioner says he filed on September 22, 2004. The discrepancy is not material.

[2] Petitioner had two previous convictions. On December 26, 1991, the Supreme Court of the State of New York, Kings County, sentenced him to five years' probation after he pled guilty to criminal possession of a weapon in the third degree, in violation of N.Y. Penal Law § 265.02. On June 30, 1993, the United States District Court for the Southern District of Ohio sentenced Johnson to 24 months' imprisonment, followed by a three-year term of supervised release, after he pled guilty to making false and fictitious statements to a federally licensed firearms dealer in order to purchase firearms, in violation of 18 U.S.C. §§ 922(a)(6) and 924(a)(1)(B).

On August 21, 2009, the USCIS denied Johnson's naturalization application, finding that he lacked good moral character based on the two Connecticut convictions, considered crimes of moral turpitude. On administrative appeal under 8 U.S.C. § 1447(a), the USCIS affirmed its denial on January 19, 2010. Johnson then filed this suit seeking review of USCIS's decision to deny his naturalization application.

III. *Discussion*

Under 28 U.S.C. § 1421(c), our review of the USCIS's determination is de novo, and we can make our own findings of fact and conclusions of law.[3] If there are no disputed issues of material fact, we may dispose of the petition by way of a motion for summary judgment. *Chan v. Gantner*, 464 F.3d 289, 296 (2d Cir. 2006); *Abulkhair v. Bush*, No. 08-5410, 2010 WL 2521760, at *5 (D.N.J. June 14, 2010)(citing *Chan*).

In pertinent part, under 8 U.S.C. § 1427(a), an alien may be naturalized if he meets the following requirements: (1) after being lawfully admitted for permanent residence, he resided in the United States for five years immediately preceding his application for naturalization; (2) "resided continuously within the United States from the date of the application up to the time of admission to citizenship"; and (3) during all of these periods "has been and still is a person of good moral character . . . ." *Id.* These requirements mean that the statutory requirement of good moral character extends for

---

[3] Section 1421(c) reads as follows:

A person whose application for naturalization under this subchapter is denied, after a hearing before an immigration officer under section 1447(a) of this Title, may seek review of such denial before the United States district court for the district in which such person resides in accordance with chapter 7 of title 5. Such review shall be de novo, and the court shall make its own findings of fact and conclusions of law and shall, at the request of the petitioner, conduct a hearing de novo on the application.

3

five years before the application until the oath of allegiance is administered.  *See* 8 C.F.R. § 316.10(a)(1).

> No person shall be regarded as, or found to be, a person of good moral character who, during the period for which good moral character is required to be established, is, or was--
>
> . . . .
>
> (3) a member of one or more of the classes of persons . . . described in subparagraph[ ]  (A) of section 1182(a)(2) of this title . . .

8 U.S.C. § 1101(f)(3).  In turn, 8 U.S.C. § 1182(a)(2)(A)(i)(I) specifies a crime involving moral turpitude.  *See also* 8 C.F.R. § 316.10(b)(2)(i)("[a]n applicant shall be found to lack good moral character if during the statutory period" he has "[c]ommitted one or more crimes involving moral turpitude").

"[T]he burden is on the alien applicant to show his eligibility for citizenship in every respect."  *Berenyi v. District Director*, 385 U.S. 630, 637, 87 S.Ct. 666, 671, 17 L.Ed.2d 656 (1967).  He must do so by a preponderance of the  evidence.  8 C.F.R. § 316.2(b); *see also Gilkes v. Ridge*, No. 03-1417, 2008 WL 545033, at *2 (M.D. Pa. Feb. 25, 2008). "[D]oubts 'should be resolved in favor of the United States and against the claimant.'"  *Berenyi*, 385 U.S. at 637, 87 S.Ct. at 671 (quoted case omitted).

Under 8 U.S.C. § 1446, a USCIS employee conducts an examination on applications for naturalization and decides whether to grant or deny them.  8 U.S.C. § 1446(d).  Generally, under 8 C.F.R. § 335.3(a), a decision must be made within 120 days of the initial examination of the applicant.  This dovetails with 8 U.S.C. § 1447(b), which permits an applicant to apply to the appropriate district court for a hearing on his naturalization application if no section 1446 decision is made on the application "before the end of the 120-day period after the date on which the examination is conducted."

4

We will deny the petition for review. We have reviewed the USCIS's arguments on why the state-law convictions constitute crimes involving moral turpitude and why those crimes thus bar Petitioner's naturalization. We agree with that analysis and apply it here to deny the petition.

Petitioner's sole ground for naturalization is based on equitable estoppel. He asserts that he is entitled to be naturalized because the USCIS had a regulatory duty under section 335.3(a) to decide his application within 120 days of his initial examination. This period began to run on July 5, 2005, the date Petitioner had his initial interview with USCIS. For this 120-day period and for the preceding five-year period Petitioner had no convictions and thus was eligible for naturalization. In fact, USCIS could have granted the application for the next year and nine months, until Petitioner's March 2007 convictions, but did nothing. Petitioner argues that this delay was affirmative misconduct, entitling him under the doctrine of equitable estoppel to being made a citizen.[4]

Petitioner's position has no merit. First, while equitable estoppel may apply in some immigration contexts, *see Mudric v. Attorney General*, 469 F.3d 94, 99 (3d Cir. 2006), it does not apply to citizenship determinations. *See Abreu-Mejia v. Attorney General*, 393 F. App'x 918, 921 (3d Cir. 2010)(per curiam) (nonprecedential)("where an alien does not meet the statutory requirements for citizenship, a court does not have authority to confer citizenship through equitable means")(citing *I.N.S. v. Pangilinan,* 486 U.S. 875, 885, 108 S.Ct. 2210, 2217, 100 L.Ed.2d 882 (1988)). Second, even if equitable estoppel could be applied here, Petitioner fails to satisfy its requirements. To prevail on such a claim, Petitioner "must establish (1) a misrepresentation; (2) upon which he reasonably relied; (3) to his detriment; and (4) affirmative misconduct." *Mudric*, *supra*,

---

[4] Petitioner also provides a mitigating explanation for why he pled guilty to the Connecticut charges, (doc. 26, CM/ECF p. 2), but does not argue that this entitles him to naturalization, nor does he provide any authority for us to consider the explanation in connection with his petition.

5

469 F.3d at 99.  Mere delay in considering an immigration application, the agency's conduct here, is not affirmative misconduct.  *Id.*

We add that Petitioner did have a legal remedy.  After the expiration of the 120-day period, he could have gone into federal court under section 1447(b) and requested a hearing on his naturalization application.  One purpose of this provision is to confer on the applicant the power to decide the time frame within which the application would be processed.  *United States v. Hovsepian*, 359 F.3d 1144, 1164 (9th Cir. 2004)(en banc).

We will issue an appropriate order.


/s/William W. Caldwell
William W. Caldwell
United States District Judge

Date: February 16, 2011

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

RICHARD ANDRIA JOHNSON, :
    Plaintiff :
 :
    vs.                                      CIVIL NO. 1:CV-10-1003
 :
U. S. CITIZENSHIP AND :
IMMIGRATION SERVICES,
    Defendant :

*O R D E R*

AND NOW, this 16th day of February, 2011, it is ordered that:

1. Respondent's motion (doc. 21) for summary judgment is granted.

2. The petition (doc. 1) for review seeking naturalization is denied.

3. The Clerk of Court shall close this file.

                           /s/William W. Caldwell
                           William W. Caldwell
                           United States District Judge